CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 17 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AUBREY DION GOODEN, a.k.a.<br>A.D. GOODEN-EL,<br><br>        Plaintiff,<br>v.<br><br><br>WILLIAM W. MUSE, ET AL.,<br><br>        Defendant(s). | CASE NO. 7:13CV00245<br><br><br><br>MEMORANDUM OPINION<br><br><br><br>By: Glen E. Conrad<br>Chief United States District Judge |

Aubrey Dion Gooden, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] In his voluminous complaint, Gooden alleges that Virginia Parole Board members have unfairly classified him as ineligible for discretionary parole, prison medical personnel have deprived him of adequate medical care, prison officials have mishandled his grievances and retaliated against him for filing them, an officer purposely tricked him into eating pork in violation of his religious tenets, and various state court personnel have erroneously decided legal issues, all in violation of his constitutional rights.[2] Upon review of the record, the court finds that the complaint must be summarily dismissed under 28 U.S.C. § 1915A(b)(1).

---

[1] Gooden states that his name is "A.D. Gooden-El" and asks the court to call him by that name in court orders and opinions. Gooden indicates in his pleadings, however, that the state court denied his petition to legally change his name to "Gooden-El." Therefore, the court will refer to him by the name under which he was convicted.

[2] Gooden's complaint joins multiple claims against multiple defendants with no regard for the restrictions of Rules 18 and 20 of the Federal Rules of Civil Procedure. Under Rule 18(a), which governs joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant. However, in order to name other defendants in the same lawsuit, the plaintiff must satisfy Rule 20(a)(2), which governs joinder of parties. Rule 20(a)(2) permits joinder of multiple defendants only where the right to relief asserted against them arises out of the same transaction or occurrence and concerns a common question of law or fact. On its face, Gooden's omnibus complaint does not comply with either of these rules. Because the court dismisses the complaint for failure to state a claim, however, the court will not further address Gooden's joinder problems.

## Standard of Review

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). The court's review under § 1915A(b)(1) for frivolousness allows dismissal of a claim "based on an indisputably meritless legal theory" or on "factual contentions [that] are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989) (applying prior version of § 1915(d), authorizing courts to dismiss frivolous claims filed in forma pauperis).

A plaintiff purporting to state a claim under § 1983 must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). In reviewing Gooden's allegations, the court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true," but need not assume the veracity of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). Plaintiff's allegations do not state an actionable claim unless he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.662, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (finding dismissal appropriate where plaintiff's factual allegations do not support "plausible" claim for relief).

## Discussion of Claims

Gooden's complaint and supplemental complaint present 20 claims against more than two dozen individuals in various regions of the state. For the sake of clarity and brevity in this

2

opinion, the court will group the claims and the facts offered in support according to subject matter.

### A. Parole Issues (Claims 1-5)[3]

According to Gooden, in 1987, he was convicted of an armed robbery in Norfolk and an armed robbery in Portsmouth. For the latter conviction, he was sentenced to 13 years in prison with 7 years suspended. In 1995, Virginia abolished discretionary parole for offenses committed on or after January 1, 1995. See Va. Code Ann. § 53.1-165.1. Parole authorities granted Gooden discretionary parole, and he was released in 1997. In 2000, Gooden shot and killed a "home invader" and, after being questioned by police, absconded to Florida. Authorities later arrested and returned him to Virginia. For absconding from parole on the 1987 Portsmouth sentence, he was sentenced to serve the 7-year sentence that the court had previously suspended. He was also convicted of murder and sentenced to 20 years. He is now serving active sentences totaling 27 years.

In March 2010, Gooden received notice that he is no longer eligible for discretionary parole consideration under Virginia Code § 53.1-151(B1), based on an erroneous finding that he had been convicted of a third robbery in October 2000. (ECF No. 1, p. 9) (emphasis added). His parole eligibility date, which had previously been listed as April 2020, suddenly changed to January 2023.

Virginia Code § 53.1-151(B1) establishes a person's ineligibility for parole as follows:

> Any person convicted of three separate felony offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms or other deadly weapon, or any combination of the offenses specified in subdivisions (i), (ii) or (iii) when such

---

[3] See ECF No. 1, pp. 5-26.

3

offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

Gooden is convinced that this statute does not apply to him, because he was not convicted of murder before January 1, 1995, and has never been convicted of a third robbery offense. On May 27, 2011, however, the Parole Board denied Gooden's final appeal, advising him that "review [of] his appeal of parole ineligibility status in accordance with the provisions of Virginia Code Section 53.1-151(B1) [had] determined [Gooden] to be ineligible for discretionary parole consideration."[4] (ECF No. 1, p. 14) Gooden filed a petition for a writ of habeas corpus in the Portsmouth Circuit Court seeking a finding that he is eligible for parole, but moved for and was granted a voluntary nonsuit in July of 2012. He then filed his § 1983 complaint here in May of 2013.

In Claims 1 through 5, Gooden sues individual members of the Virginia Parole Board, past and present, for allegedly unfair practices in considering him for parole. He asserts that the Board's May 27, 2011 action, revoking his parole eligibility on his pre-1995 offense, deprived him of due process and violated the Ex Post Facto Clause. As relief on these claims, he seeks injunctive and declaratory relief regarding his eligibility for discretionary parole consideration. The court finds no merit to any of Gooden's parole claims and will summarily dismiss them under § 1915A(b)(1).

"It is difficult to imagine a context more deserving of federal deference than state parole decisions." Vann v. Angelone, 73 F3d 519, 521 (4th Cir. 1996). Because a state inmate has no constitutional right to be paroled before his valid sentence expires, states are not obligated to establish a parole system and, if they choose to do so, have broad discretion in defining parole

---

[4] In the parole section of his complaint, Gooden refers several times to "Plaintiff's Habeas Corpus" exhibits, which are not included in the record before the court. Gooden's allegations alone reflect that his parole claims are without merit, however.

eligibility factors. Id. (citing Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979); Franklin v. Shields, 569 F.2d 784, 800 (4th Cir.1977) (en banc)). Thus, a state parole issue gives rise to a federal due process claim only where the inmate demonstrates that "the state has created a legitimate claim of entitlement to some aspect of parole." Id. (internal quotations and citations omitted). An inmate's only constitutionally protected interest in parole is in being considered for discretionary release in accordance with the laws of the state, Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991), and in Virginia, parole authorities satisfy due process protections when they provide the parole-eligible inmate with a stated reason for denying parole. Id. (citing Franklin, 569 F.2d at 784). "[F]ederal courts must defer to state agencies applying state laws and thus their oversight of state parole proceedings has been extremely limited." Vann, 73 F.3d at 522.

Gooden fails to demonstrate that he is eligible for discretionary parole on any portion of his remaining sentences. He admits that he has two convictions for armed robbery and one conviction for murder. By the plain terms of Virginia Code § 53.1-151(B1), with these three separate convictions on his record, he is no longer eligible for discretionary parole under § 53.1-151(A). See Brown v. Virginia Dept. of Corrections, 886 F. Supp. 531, 534-35 (E.D. Va. 1995) (rejecting ex post facto and due process claims based on revocation of parole eligibility on previously parole-eligible sentences under § 53.1-151(B1) after third qualifying conviction). "There is no statute or procedure that excepts the time remaining from sentences on which parole was revoked." Id. at 535. Moreover, Gooden cites no authority holding that his murder conviction could not terminate his eligibility for discretionary parole by operation of § 53.1-151(B1), merely because he committed the crime in 2000 rather than in 1994, and the court finds no such authority. See Vaughan v. Murray, 441 S.E.2d 24, 26 (Va. 1994) ("The subparagraph mandates that when, as here, a person has been convicted of three separate felony offenses of

murder, rape, or armed robbery, which were not part of a common act, transaction, or scheme, the felon is ineligible for parole."). Because Gooden has not shown that he is eligible for discretionary parole consideration, the court cannot find that his allegations about state parole authorities' delay in terminating his parole eligibility or misstatements of fact in some parole paperwork give rise to any due process claim actionable under § 1983.

Gooden's ex post facto claims also fail. "[A] law raises ex post facto concerns only if 'it changes the legal consequences of acts completed before its effective date.'" United States v. Parriett, 974 F.2d 523, 525 (4th Cir. 1992) (quoting Weaver v. Graham, 450 U.S. 24, 31 (1981). "To fall within the ex post facto prohibition, a law must 1) be retrospective, that is 'it must apply to events occurring before its enactment;' and 2) it must 'disadvantage the offender affected by it.'" Id. (quoting Weaver, 450 U.S. at 28). Gooden's case closely parallels the petitioner's situation in the Brown decision:

> Clearly, petitioner is disadvantaged by operation of the recidivist statute: application of § 53.1-151(B) to him made his right to parole on his previous sentences meaningless. However, this additional punishment is not retrospective because the punishment does not stem from events occurring before the statute's enactment.
> 
> . . . .
> 
> Section 53.1-151(B) was enacted before petitioner committed the acts for which he is now incarcerated without parole. Petitioner was on notice that he would not be eligible for parole if convicted of three or more acts defined in the statute. Thus, § 53.1–151(B) does not violate the ex post facto clause as applied to petitioner.

886 F. Supp. at 534. Because § 53.1-151(B1) was in effect at the time of Gooden's 1987 convictions, he was on notice that conviction of a third qualifying offense would terminate his eligibility for parole on those 1987 convictions. The additional punishment imposed on him through the operation of the statute is not retrospective, because it does not stem from any event occurring before the statute's enactment. Thus, application of this section to Gooden's sentences

6

does not offend ex post facto principles. Finding no constitutional problem presented by any of Gooden's claims regarding his parole eligibility, the court summarily dismisses his Claims 1 through 5, pursuant to § 1915A(b)(1), for failure to state a claim.

### B. Stomach Medication (Claims 6-7)[5]

Gooden alleges that on August 28, 2012 he arrived at Green Rock Correctional Center from Sussex I State Prison, but his prescription Zantac for gastro-esophageal reflux disease ("GERD") did not arrive with him. Nurses allegedly advised him that, according to policy, the prison doctor, Defendant Wang, would conduct an intake review of Gooden's medical records within two days and renew his medication. Without the medication, Gooden would throw up his food after eating a full meal, unless he restricted his diet to bread and water. When the medication had not been renewed by September 4, 2012, Gooden filed emergency grievances, asking to have his medication renewed. The responding nurses advised him that his situation did not meet the definition of an emergency and instructed him to file a regular request to be seen in the medical department. (ECF No. 9-3, Ex. 17 &18.)

Instead of following these directions, Gooden filed a "request for services," asking the medical department for a temporary supply of his medication until the doctor reviewed his chart. On September 7, 2012, Gooden received a response indicating that he had been scheduled to see the doctor about having his medication renewed. Two and a half weeks after his arrival at Green Rock, Gooden saw the doctor, told him he wanted his medication renewed, and received his medication. Gooden alleges that Dr. Wang purposely instructed nurses to tell inmates that he would renew medications automatically, based on review of their charts; the actual practice was to renew most medications only if the inmate filed a request to see the doctor for the renewal.

---

[5] ECF No. 8-1, p. 1; ECF No. 9-1, pp. 1-13.

In Claim 6, Gooden sues Dr. Wang for failing to renew his medication automatically and for giving misleading instructions. In Claim 7, Gooden sues Defendants Mayes and Tickle for failing to carry emergency trial packs of commonly prescribed non-narcotic medications in Green Rock's pharmacy. Gooden alleges that their omission caused him harm after his prescription expired and before he saw the doctor to request a refill.

To prove that the course of medical treatment he received amounted to a constitutional violation, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-106 (1976). Plaintiff must allege facts demonstrating that, objectively, defendant's "acts or omissions [were] sufficiently harmful" -- that the defendant's conduct caused serious injury or aggravation or deterioration of an existing medical condition. Id. at 106. An officer acts with "deliberate indifference" if he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official's intentional act or omission that merely delays an inmate's access to necessary medical care may state a constitutional claim, but only if plaintiff shows that the defendant's conduct resulted in substantial harm to the patient. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) (citing other cases). Mere malpractice or negligence in diagnosis does not state a federal claim. Estelle, 429 U.S. at 105-106.

Gooden's allegations do not support any Eighth Amendment claim. First, he fails to demonstrate that the GERD symptoms he suffered without his medication for a couple of weeks constituted a serious medical need. Gooden admits that he could control the symptoms on a short-term basis through diet and does not state facts suggesting that his overall condition was aggravated by temporarily being without his medication. Second, Gooden fails to demonstrate

that any of the defendants acted with deliberate indifference. The record does not indicate that Dr. Wang had any knowledge of Gooden or his GERD symptoms or that the doctor knowingly denied him treatment. At the most, Gooden alleges that Dr. Wang negligently failed to follow policy and promptly review his chart, which is insufficient to support a constitutional claim, and that Dr. Wang's alleged instruction to the nurses caused a delay in Gooden's treatment. Yet, according to the policy the nurses described, Gooden knew within two days that the policy timeline had not been met. He also knew from the emergency grievance responses that the appropriate remedy was to file a request to be seen in the medical unit. It was Gooden's stubborn refusal to attempt this remedy that caused the delay in his receiving treatment. For these reasons, the court will summarily dismiss Gooden's Claim 6 against Dr. Wang, pursuant to § 1915A(b)(1).

Similarly, Gooden's allegations do not state any actionable claim against Mayes and Tickle. At the most, their failure to carry emergency packs of GERD medication was negligence, which is not actionable under § 1983. Moreover, for the reasons stated, Gooden's allegations do not indicate that he suffered any aggravation of his medical condition as a result of defendants' conduct. The court will summarily dismiss Claim 7, pursuant to § 1915A(b)(1).

### C. Religious Diet Violation (Claims 8-9)[6]

In Claims 8 and 9, Gooden alleges that on December 20, 2012, Defendant Marion lied to him by claiming that the Food Service supervisor had told him the bologna on the food tray was not pork. Gooden, who had not eaten pork for 20 years because it is barred by his Islamic religious beliefs, ate the bologna in reliance on Marion's false assurance and allegedly suffered nausea, a migraine headache, and deep religious shame. Gooden now believes that the bologna contained pork, and asserts that the supervisor denies telling Marion that it was not pork.

---

[6] ECF No. 8-1, p. 1; ECF No. 9-1, pp. 13-20.

Gooden speculates that Marion had distributed all the non-pork meals on his cart and lied to Gooden in order to avoid going back to the kitchen for more non-pork meals.

Prison inmates retain First Amendment protection of the free exercise of religion, which can be limited to achieve legitimate penological objectives." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Thus, "an inmate has the constitutional right to obtain adequate nourishment from prison foods permitted by his religious dietary rules, unless the prison's failure to provide such foods is reasonably related to a legitimate penological interest." Simms v. Edmonds, 232 F.3d 889, 2000 WL 1648951, at *1 (4th Cir. 2000) (unpublished) (citing Benjamin v. Coughlin, 905 F.2d 571, 579 (2d Cir.1990)).

To state a claim that prison officials or regulations have violated his right to free exercise, plaintiff must first prove that the challenged, official action substantially burdened his exercise of a sincerely held, religious belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981). An officer's negligent action that causes an inmate to violate his religious dietary beliefs on one occasion, however, does not rise to constitutional proportions. See, e.g, Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."); Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009) (holding that isolated, negligent violation of kosher restrictions did not support Free Exercise claim); Schreane v. Seana, 506 F. App'x 120, 124 (3rd Cir. 2012) (finding isolated, negligent act did not violate inmate's free exercise right); Copenhaver v. Michigan Dep. of Corrections, No. 05-CV-73286, 2007 WL

2406925 (E.D. Mich. 2007) (finding official's refusal to supply kosher salad at one meal did not impose substantial burden on plaintiff's religious exercise).

Gooden's allegations are insufficient to state a plausible claim that Marion knowingly violated his religious rights. First, Gooden does not explain how he knows the bologna was pork or demonstrate that unknowing consumption of pork on one occasion placed a substantial burden on his beliefs. Clearly, Marion's actions did not "pressure" Gooden to eat the meat that allegedly violated his beliefs. Second, Gooden does not allege facts indicating that Marion knew the bologna he served to Gooden was pork or, more importantly, that he knew Gooden's eating of the bologna would violate his religious beliefs. At the most, Gooden alleges that Marion negligently failed to verify whether the bologna was pork and lied to cover that failure. These allegations simply are not sufficient to support a plausible claim that Marion knowingly placed a substantial burden on Gooden's religious practice so as to violate his First Amendment rights. Accordingly, the court concludes that Claims 8 and 9 against Defendant Marion must be summarily dismissed without prejudice under § 1915A(b)(1).

### D. Grievance Procedure Problems (Claims 10-15, 17-18)[7]

In this set of claims, Gooden raises numerous complaints about the manner in which the defendant officials implement the inmate grievance procedures at Green Rock. In Claim 10, he asserts that Defendant Bayne deprived him of his right to free speech and expression by advising him that inmate remedy forms using the word "incompetence" would be rejected for use of insolent language. In Claims 11 and 12, Gooden complains that Bayne's refusal to log Gooden's remedy form because it did not comply with procedure, and Defendant Crowder-Austin's upholding that decision on appeal, deprived Gooden of his right to redress grievances. Claim 13 asserts that Bayne falsified the response time on an emergency grievance, interfering with

---
[7] ECF No. 8-1, pp. 2-4; ECF No. 9-1, pp. 20-37; ECF No. 9-2, pp. 1-27.

Gooden's right to utilize the emergency grievance process. In Claims 14 and 15, Gooden alleges that Bayne's refusal to log certain informal complaints deprived Gooden of his right to redress grievances, and Crowder-Austin's upholding that decision on appeal, deprived Gooden of his right to redress grievances. In Claim 17, Gooden asserts that Bayne logged only a limited number of informal complaints each month as a means of encouraging inmates to use other available means of addressing concerns, such as sick call requests, and Crowder-Austin affirmed the majority of Bayne's intake decisions, thus constituting a conspiracy between the two officers to deprive him of the right to redress grievances. Finally, in Claim 18, Gooden challenges the constitutionality of the VDOC's grievance procedure because it lacks central oversight to ensure that individual institutions do not deprive inmates of access to the grievance procedures.

These allegations do not give rise to any constitutional claim. Inmates do not have a constitutionally protected right to a grievance procedure or to utilize an existing procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Accordingly, a prison official's failure to comply with the state prison's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

Under these principles, Gooden has no actionable claim that he was deprived of the right to free speech or the right to redress grievances, merely because officials allegedly deprived him of some aspect of the established grievance procedure to which he had no protected right. Moreover, his own allegations indicate that he has alternative measures by which to "redress grievances" or exercise his right to free speech. The mere fact that his grievance using the word "incompetence" may be rejected for using insolent language does not deprive him of the right to make complaints about employee conduct. Finally, because Gooden has no constitutional right to the grievance procedure, he also has no constitutional basis for complaint about the

procedure's provisions or structure. Finding no constitutional deprivation arising from Gooden's allegations, the court will summarily dismiss Claims 10-15 and 17-18, under § 1915A(b)(1), as legally frivolous.

### E. Retaliation (Claim 16)[8]

In Claim 16, Gooden alleges that Bayne deprived Gooden of his right to redress grievances when she retaliated against him for writing grievances by having him transferred to a higher level security institution. On February 4, 2013, Bayne allegedly told Gooden that because she was tired of his grievances, she had spoken to the right person and Gooden was "outta here. Call it the Pogue effect." (ECF No. 9-1, p. 34.) Two days later, Gooden was transferred to a higher security prison, although he had not asked for, and was not eligible for, a transfer.

"Retaliation by a public official for the exercise of constitutional right is actionable under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper." American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). An inmate "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. He must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the retaliatory action. See, e.g., Wicomico County, 999 F.2d at 785 (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977)). He must also show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the alleged retaliation. Id. at 786 (finding that mere inconvenience in exercise of constitutional rights not adverse enough to constitute actionable retaliation).

Gooden's allegations fail to support the elements of a retaliation claim. First, as discussed, because inmates have no constitutional right to participate in a grievance procedure,

---

[8] ECF No. 8-1, pp. 2-3; ECF No. 9-1, pp. 34-37.

Gooden was not exercising a constitutionally protected right when he did so. Moreover, he had no constitutional right to be housed in a prison of any particular security ranking. See Meachum v. Fano, 427 U.S. 215, 223-224 (1976). Gooden also fails to demonstrate that Bayne's alleged retaliation (the transfer) caused any adverse impact on his ability to exercise his constitutional rights. Second, other than Bayne's alleged comment about getting him transferred, Gooden fails to show that retaliation played any part in his transfer. He admits that his security points were not inconsistent with assignment to the facility to which he was transferred. In addition, he states no facts showing that Bayne, as grievance coordinator, had any personal authority or influence whatsoever over transfer decisions. For these reasons, the court will summarily dismiss without prejudice Claim 16, alleging retaliatory transfer by Defendant Bayne, under § 1915A(b)(1), for failure to state any actionable claim.

### F. State Court Decisions (Claims 19-20)[9]

Gooden was convicted under the name "Aubrey Dion Gooden." In 1988, before converting to Islam, he legally changed his name under Virginia law to Lorenzo Ahmar Scorpio. Then, in July of 2012, when he was incarcerated at Sussex I State Prison, Gooden filed a petition in Sussex County Circuit Court, seeking to change his name to "Aubrey Dion Gooden-El," for religious reasons. The circuit court denied the petition, finding that Gooden had not shown any compelling reason for the change, as required by the applicable state statute. On appeal, the Supreme Court of Virginia reviewed the petition, denied Gooden's application to proceed in forma pauperis, and gave Gooden 30 days to pay the $50.00 filing fee. When Gooden failed to pay the fee, the court dismissed the petition.

---

[9] ECF No. 8-1, p. 4; ECF No. 9-2, pp. 27-37.

In Claim 19, Gooden sues the Sussex County circuit court judge, asserting that his decision of October 17, 2012, to deny Gooden's petition to change his legal name for religious reasons, was legally erroneous under Virginia law and deprived plaintiff of his right to free exercise of his Islamic beliefs. In Claim 20, Gooden sues all the justices of the Supreme Court of Virginia, asserting that their decision to deny Gooden's application to proceed in forma pauperis deprived him of his right of access to the court to appeal the Sussex County court's decision and, thereby, deprived him of his right to free exercise of his Islamic beliefs. As relief, Gooden seeks a declaratory judgment and injunctive relief, essentially directing these officials to reopen his name-change case in Sussex County and his appeal in the Supreme Court of Virginia. These claims must be dismissed as moot.

The jurisdiction of federal courts is limited to live cases or controversies. U.S. Const. art. III, § 1. If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claims must be dismissed as moot. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. See, e.g., Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991) (finding that prisoner's transfer rendered moot his claims for injunctive and declaratory relief).

Gooden's submissions indicate that since he filed his name change petition in Sussex County, where he was then incarcerated, he has been transferred twice to prison facilities located in other jurisdictions. Because Gooden is no longer incarcerated in Sussex County, the Sussex County court no longer has jurisdiction to order his name change. Thus, Gooden's claims asking this court to order certain actions by the Sussex County court and the Supreme Court of Virginia regarding the Sussex County lawsuit can no longer have the desired outcome and must be

dismissed as moot. If Gooden still desires to seek a name change, he is advised that his appropriate remedy is to file the proper petition in the circuit court in the county or city where he is now incarcerated, to appeal to the Supreme Court of Virginia from the circuit court's ruling, if warranted, and, if still unsatisfied with the outcome, to petition the United States Supreme Court for a writ of certiorari.

## Conclusion

For the reasons stated, the court finds that Gooden fails to allege facts stating any constitutional claims actionable under § 1983. To the extent that he may also be raising claims under state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c). Therefore, the court dismisses the entire complaint without prejudice, pursuant to § 1915A(b)(1). An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 17th day of December, 2013.

_____
Chief United States District Judge